# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JACQUES DESROSIERS and
YOLETTE L. DESROSIERS

        *Plaintiffs,*

   v.

SIG SAUER, INC.

        *Defendants.*

Case No. 1:22-cv-11674-FDS

## PLAINTIFFS' MEMORANDUM OF LAW SUPPORTING APPLICATION OF MASSACHUSETTS GENERAL LAWS, CHAPTER 93A

Plaintiffs, Jacques Desrosiers and Yolette Desrosiers, by and through their undersigned counsel, submit this memorandum of law pursuant to this Court's August 4, 2025 Order [Doc. 181] regarding the effect of the jury's verdict on Plaintiffs' remaining claim pursuant to Massachusetts General Laws, Chapter 93A. As set forth below, Chapter 93A claims are decided exclusively by the Court, and jury findings are not binding as to the ultimate legal determination of whether conduct was "unfair or deceptive" or the cause of harm to the Plaintiffs. See, *Nei v. Burley*, 388 Mass. 307, 315 (1983); *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1063 (1st Cir. 1985); *Bryksa v. B & B Protector Plans, Inc.*, 754 F. Supp. 2d 199, 201 (D. Mass. 2010).

## I.  INTRODUCTION / BACKGROUND

In Plaintiff's case-in-chief, Plaintiff presented substantial direct evidence that his Sig Sauer P320 unintendedly discharged at a time where he did not want it to discharge and he did not expect it to discharge.  Plaintiff testified that he knows his finger did not go into the trigger guard across the trigger face. *See* Plaintiff's Testimony, July 15, 2025, p. 48 at Exhibit A. Plaintiff testified, "I remember my finger was on the side of the gun." *Id.* at p. 97.  The trigger is located within the trigger guard which is part of the P320's frame.  Thus, the trigger could only have been contacted by a side graze of Plaintiff's finger or a graze of the clothing from and/or within his waistband.

Through the testimony of and testing by Plaintiff's experts, Dr. William Vigilante, and gunsmith, James Tertin, Plaintiff presented substantial direct evidence that the unintended trigger actuation would have been prevented had Sig Sauer not designed the P320 in a defective manner by refusing to included necessary safeties on Plaintiff's P320, by designing the P320 with a pre-cocked striker, and by making the trigger pull length unreasonably short given the lack of any external safety.

On July 30, 2025 the Jury was asked (1) Did Plaintiff Jacques Desrosiers prove by a preponderance of the evidence that the Defendant Sig Sauer, Inc. breached the implied warranty of merchantability by defectively designing the P320 Pistol?; and (2) "[D]id Plaintiff Jacque Desrosiers prove by a preponderance of the

evidence that the Defendant Sig Sauer, Inc.'s defective design of the P320 pistol cause him injury?"  *See*, Verdict Form at [Doc 179] at attached as Exhibit B.  The jury <u>unanimously</u> responded, "Yes" to both questions.  *Id.* The jury also found that Sig Sauer failed to warn Plaintiff, although it did not conclude that failure to warn was a cause of the injury. *Id.*  The Jury did not award damages only because the jury decided that Plaintiff voluntarily and unreasonably used the P320 pistol.

In his Complaint, Plaintiff alleged that "SIG Sauer engaged in unfair or deceptive acts or practices in connection with its sale of firearms to the City of Cambridge." (Complaint ¶159).  Plaintiff also alleged: "As a result of SIG Sauer's actions, and in connection with SIG Sauer's sale of firearms within the District of Massachusetts, Plaintiff was harmed due to his SIG Sauer firearm malfunctioning on or about October 10, 2019." (Complaint ¶158). Plaintiff also presented evidence, and has additional evidence Plaintiff could present, of Sig Sauer's deceptive acts and practices in connection to the marketing and sale of the P320.

In addition to numerous examples of the P320 discharging uncommanded, when the user did not want it to fire, Plaintiff presented evidence that Sig Sauer affirmatively marketed a promise that the gun would not fire unless the user wanted it to.  Despite knowing of unintended discharges of the P320, and predicting their occurrence, Sig Sauer literally told its customers that "The P320 won't fire unless

you want it to." Sig Sauer continued marketing this promise despite receiving notification of unintended discharges and predicting that they were likely to occur.




## II.    LEGAL ARGUMENT

As set forth below, whether Sig Sauer engaged in unfair or deceptive practices in its design, marketing and sale of the P320 to the Cambridge Police Department or whether those practices caused Plaintiff harm are questions are exclusively for this Honorable Court to answer.  Application of Chapter 93A §2 and §9 are not effected by the jury's verdict.

Jury findings are not binding as to the ultimate legal determination of whether conduct was "unfair or deceptive" under Chapter 93A.  *Nei*, 388 Mass. at 315; *Wallace Motor Sales, Inc.*, 780 F.2d at 1063.  Factual findings made by the jury may

inform the Court's analysis, but do not decide the 93A claim. The 93A claim is for the Court to decide. Here, the jury determined that (1) the P320 pistol was defective; (2) the defect caused plaintiff's injury; (3) Sig Sauer failed to warn of the defect; but (4) plaintiff knowingly and unreasonably used the defective product, barring recovery under breach of warranty. *See* Jury Verdict at Exhibit B.

These findings may help shape but do not resolve the Chapter 93A claim. The Court must independently decide whether Sig Sauer's conduct in designing, marketing, and selling the P320 constitutes an "unfair or deceptive act or practice" and whether that caused Plaintiff's harm.

### A. PLAINTIFF'S CLAIM PURSUANT TO G.L. CH. 93A, §2, 9 IS NOT FORECLOSED BY THE JURY'S VERDICT.

Pursuant to Mass. G.L. Ch. 93A §2:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws Ann. ch. 93A, § 2.

A 93A claim is a stand-alone action. "93A establishes a new cause of action for unfair and deceptive trade practices, neither wholly tortious nor wholly contractual in nature." *Travis v. McDonald*, 397 Mass. 230, 232, 490 N.E.2d 1169, 1171 (1986).

To establish liability under § 9 or § 11, a plaintiff must prove:

1. The defendant engaged in an unfair or deceptive act or practice in trade or commerce;

2. The plaintiff suffered an identifiable loss of money or property; and

3. A causal connection exists between the unfair or deceptive act and the loss. *Casavant v. Norwegian Cruise Line, Ltd.*, 460 Mass. 500, 503–04 (2011).

A breach of warranty of merchantability supports a collateral count under 93A. *Maillet v. ATF–Davidson Co*., 407 Mass. 185, 193, 552 N.E.2d 95 (1990)(citing cases). The sale of a product whose imperfection in design or manufacture gives rise to a common-law action may also be an unfair and deceptive act within the meaning of Chapter 93A, and the manufacturer may suffer that additional liability when the consequence of the unfair and deceptive act is injury.  Chapter 93A, §9, also directs that the Court is to "be guided by the interpretations given by the Federal Trade Commission" to §5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). "The Federal Trade Commission has concluded that failure to warn of a defective or dangerous condition that could cause personal injury constitutes an "unfair" trade practice." *Maillet,* 407 Mass. at192, 552 N.E.2d at 99–100(citing, *Matter of International Harvester Co.,* 104 F.T.C. 949, 1064–1067 (1984). "A plaintiff in a c.93A case,… need not prove the existence of a contract, the defendant's intent to misrepresent, or his own reliance on the misrepresentation, all traditionally issues of fact for the jury." *Nei*, 388 Mass. at 313.

Here, the jury found that Sig Sauer breached the warranty of merchantability and that it caused harm.  The jury also found that Sig Sauer failed to warn of the P320's defect. This Court heard evidence Sig Sauer's conduct was undeniably deceptive.

- Sig Sauer promised "safety without compromise."

- Sig Sauer told the public the P320 was would not fire unless they wanted to. *Id.*  Sean Toner Testified:

```
Q.   And this is Sig Sauer's Safety Without Compromise
Timetable.  Do you see that?
A.   Yes, it is.
Q.   And if we look at the promise that Sig Sauer made, "We've
design safety elements into every necessary feature of this
pistol.  From the trigger to the striker and even the magazine,
the P320 won't fire unless you want it to."
     That is what Sig Sauer told its customers, correct?
A.   Yes, it is.
Q.   It's certainly fair for customers to be able to rely on
the statements that Sig Sauer makes about its products, right?
A.   Yes.
```

*See* Sean Toner Trial Testimony, July 21, 2025, 6-33:17-24 at Exhibit C.

- This "safety without compromise" was communicated directly to Cambridge Police Department as seen in Officer Vincente's email to the department.  *See* Officer Vincente Trial Testimony, July 23, 2025, 7:32:8-7:34:10 at Exhibit D.

- Sig Sauer learned that the P320 was repeatedly firing when dropped, yet continued to sell the gun to law enforcement and civilians from January 2017 to August of 2017, without admitting its susceptibility to fire.  P320 designer, Matt Taylor, testified:

> Q.    But you guys found out about the gun not being drop-safe from the military in January or February of '17, right?
>
> A.    That is correct.
>
> Q.    Did you run down to the assembly line and hit the red emergency stop button to stop production of those guns?
>
> A.    We did not.
>
> Q.    And not only did you continue to produce them, you continued to sell them, right?
>
> A.    That is correct.
>
> Q.    You sold them all the way up until, what was it, August of 2017 before you told anybody about it?

*See* Matt Taylor Trial Testimony, July 24, 2025, 8-75:16- -76:11 at Exhibit E.

- Sig Sauer was also well aware that the P320 would discharge with unintended side trigger contact and contact from objects entering the holster.  Yet, Sig Sauer did not do a single test to evaluate the risk of side actuation.  Ex. E, Matt Taylor Trial Testimony, July 24, 2025, 8-70:6-71:1.

- When faced with more than 70 lawsuits in its home state of New Hampshire which arose from unintended P320 discharges, Sig Sauer did not decide to fix the design of its P320. Instead, it successfully lobbied the legislature for immunity.[1] An excerpt of the cited AP News report is copied below:

---

[1] https://apnews.com/article/new-hampshire-sig-sauer-ps320-lawsuits-654278c792e8e1309d70e3f69ff19bfe (Accessed August 22, 2025)

**Sig Sauer seeks help**

A Sig Sauer executive asked New Hampshire lawmakers for help in April, two weeks after a Pennsylvania-based law firm filed its most recent lawsuit in federal court in Concord on March 26 over the design of the P320. The firm represents over 100 people who have filed such lawsuits, including more than 70 in New Hampshire.

"We're fighting all these court cases out of town and every single court case we have to fight takes away money from Granite State residents and workers that we can employ and technology," testified Bobby Cox, vice president of governmental affairs for the company.

The measure took effect once Republican Gov. Kelly Ayotte signed it on May 23. Legislators said it doesn't apply to the current lawsuits. However, lawyers for Sig Sauer mentioned it as part of their argument to dismiss the March case or break up and transfer the claims of 22 plaintiffs to court districts where they live. A hearing on the matter is set for July 21.

Ayotte's office did not respond to an AP request seeking comment, but it told The Keene Sentinel that she's "proud to protect New Hampshire companies that create thousands of good-paying jobs from frivolous lawsuits."

"Out-of-state trial lawyers looking to make money will not find a venue in New Hampshire," Ayotte's office said in an emailed statement to the newspaper.

- The evidence at trial demonstrated that Sig Sauer lied with respect to the P320, and also deceived by omission. Sig Sauer did and said what it needed to sell guns and protect its reputation, even if it meant seeking protection and immunity rather than protecting its customers by fixing the flawed design of the P320.

The conduct referenced above is not even the full picture of Sig Sauer's reprehensible conduct, but it is exactly the type of conduct that is prohibited by and compensable under Mass. G.L. Ch. 93A §2.

The only reason Plaintiff was not awarded compensation by the jury was the application of the "unreasonable use" defense which is inapplicable as a complete defense to the 93A claim. As discussed below, the jury's verdict on this defense not binding on the Court's analysis of the 93A claim.  Whether a *common law* claim has been proven is for the *jury* to determine; whether *Chapter 93A* claims have been proven is for the *trial judge* to determine. *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.,* 780 F.2d 1049, 1066 (rejecting claim that judge's findings must always conform to those of the jury); *Baker v. Goldman, Sachs & Co.,* 771 F.3d 37, 49 (1st Cir. 2014)("In ruling on a ch. 93A claim, a trial court is not bound by a jury's verdict on parallel common law claim."). Although the unreasonable use defense bars a breach of warranty claim, it is not a bar to a 93A claim.  There is no Massachusetts case found by Plaintiffs that expressly holds that the unreasonable use defense bars a Chapter 93A claim.

Chapter 93A focuses on the defendant's conduct, not the plaintiff's fault. As recognized in *Aspinall v. Philip Morris Companies, Inc.*,

> "A successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, see *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 703, 322 N.E.2d 768 (1975), or that the defendant intended to deceive the plaintiff, see *Swanson v. Bankers Life Co.,* 389 Mass. 345, 349, 450 N.E.2d 577 (1983), or even knowledge on the part of the defendant that the representation was false. See *Slaney v. Westwood Auto, Inc., supra.* Although our cases offer no static definition of the term "deceptive," we have stated that a practice is "deceptive," for purposes of G.L. c. 93A, "if it 'could reasonably be found to have caused a person to act

differently from the way he [or she] otherwise would have acted.' *Purity Supreme, Inc. v. Attorney Gen.,* 380 Mass. 762, 777, 407 N.E.2d 297 (1980), quoting *Lowell Gas Co. v. Attorney Gen., supra.* In the same vein, we have stated that conduct is deceptive if it possesses "a tendency to deceive." *Leardi v. Brown,* 394 Mass. 151, 156, 474 N.E.2d 1094 (1985)". *Aspinal*, 442 Mass. 381, 394, 813 N.E.2d 476, 486–87 (2004).

The central inquiry is whether defendant's conduct was unfair or deceptive. A 93A claim is unique, and "not subject to the traditional limitations of preexisting causes of action such as tort for fraud and deceit." *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975). It is the Court, not the jury, that decides liability inquiries for the 93A claim.

1. **Chapter 93A Claims are Tried to the Court and the Court May Make Independent and Different Findings Than Those Reached by the Jury.**

It is well settled that claims under Chapter 93A are not tried to a jury. *Nei,* 388 Mass. at 315 ("the judge, not the jury, is the proper trier of fact under c. 93A"); *see also Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d at 1063. While a jury may render verdicts on parallel common-law or statutory claims, the Court is charged with making its own findings and conclusions under Chapter 93A. *Id.; see also, Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 186, 987 N.E.2d 1247, 1263 (2013)("A judge may make independent and, therefore, different, findings on the c. 93A aspect of a case that arises from the same facts which gave rise to parallel common law claim."); *Specialized Tech. Resources, Inc. v. JPS*

*Elastomerics Corp.,* 80 Mass.App.Ct. 841, 845–846, 957 N.E.2d 1116 (2011) (judge permissibly found defendants liable under c. 93A despite jury's finding for defendants on breach of contract and misappropriation of trade secrets claims where judge's factual findings conflicted with jury answers to special verdict questions on related common-law claims).

In *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, the First Circuit Court of appeals addressed the trial court's ability on a 93A claim to make findings and conclusions independent of a jury's conclusions in a common-law claim. 780 F.2d 1049. There, Wallace Motors brought an action against American Motor Sales (AMC) alleging that AMC breached its contract and engaged in the bad faith in the termination of the dealership franchise. AMC counterclaimed against Wallace Motors for, *inter alia*, breach of the franchise agreement, misrepresentation and unfair practices under Chapter 93A. Two counts were presented to the jury: a claim for bad faith termination under the Automobile Dealers Suits Against Manufacturers Act, and a breach of contract claim based on AMC's failure to repurchase parts and pay for warranty work and bonuses. A remaining count on AMC's counterclaim under Chapter 93A for damages due to unfair and deceptive acts was decided by the court.

The jury found in favor of Wallace Motors, awarding $100,000 for violation of Dealers Act and $25,000 for breach of contract. The jury also found in favor of

Wallace Motors on its claims of misrepresentation and restitution. Contrary to the jury's findings, the district court, found in favor of AMC on its chapter 93A claim and against Wallace Motors.

On ruling in AMC's favor on the claims presented by both sides under Chapter 93A and B, Judge Mazzone for the district court stated:

> "The plain fact of the matter is that I considered exactly the same evidence that the jury considered during the course of this case, *and I have come to exactly the opposite conclusion*. I see no point in requiring extensive suggested findings and rulings since the matter is clearly inconsistent. In other words, I note the jury's verdict on these claims and I tell you at the outset that I do not agree with—[*sic* ] I agree that the jury could reach the verdicts that it reached and, of course, the verdicts will stand. I'll leave it to counsel as to whether they wish to file some pleadings directed to that. *But as a matter of my independently findings [*sic* ] facts on exactly the same evidence, I do not believe Mr. Wallace and, consequently do not believe that the plaintiff has proven by a preponderance of the evidence its claims under 93B and do find that the plaintiffs in counterclaim have proven their claims under 93A. Id*. at 1064 (emphasis added).

Wallace Motors appealed the trial court's rulings on the chapter 93A claim, arguing that it was deprived of its right to a jury trial when the district court made independent findings of fact. *Id*. The Court of Appeals disagreed.

Wallace Motors relied on a line of cases involving the Civil Rights statutes, 42 U.S.C. §§ 1981–88 and the Clayton and Sherman statutes, 15 U.S.C. §§ 1 et seq. The Court of Appeals rejected Wallace Motor's argument and reasoned:

"These statutes are fundamentally different from chapter 93A and B; inherent in the federal statutes is a right to a trial by jury. A party suing or being sued under the federal statutes has the right to have a jury decide whether the statute has been violated. A trial judge cannot usurp that right by independently determining the question of liability. Thus in deciding whether to grant the equitable relief also provided for by the statute, the judge is required, in accordance with the Beacon Theatres rule, to accept the jury's finding of fact. See 9 C. Wright and A. Miller, Federal Practice and Procedure § 2338 at 134–35 (1971).

*Judge Mazzone's role in the present case was very different. There being no right to a jury trial under chapter 93A and B, it was for him to decide both whether the statute had been violated and what kind of relief was warranted.* Wallace Motors' position is also significantly different from that of a plaintiff who seeks both legal and equitable relief under a statute which provides for both forms of relief. Such a plaintiff has only one cause of action, the violation of the statute. *Wallace Motors, on the other hand, had several separate and distinct causes of action.* **Whether the common law and Dealers Act claims had been proven was for the jury to determine; whether the chapter 93A and B claims had been proven was for the trial judge.**"  780 F.2d at 1066 (emphasis added).

In a case where common law and statutory Chapter 93A claims are brought in the same action, the district court has the authority and is bound to make independent findings on the Chapter 93A claims. *Id.*

In *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.,* the trial court again demonstrated the principle that the Court must make independent findings on the 93A claim. 80 Mass. App. Ct. 841, 957 N.E.2d 1116. There, Specialized Technology Resources, Inc. sued Galica and JPS Elastomerics Corp. for breach of contract,

misappropriation of trade secrets, and violation of the unfair trade practices statute under Massachusetts General Laws Chapter 93A, Section 11.

The case was tried in the Superior Court, where the common-law claims were presented to a jury, and the Chapter 93A claim was reserved for the judge. The jury found that the method was a trade secret but concluded that Galica and JPS did not misappropriate it. However, the trial court judge found that they did misappropriate the trade secret, constituting an unfair and deceptive act under Chapter 93A, and awarded damages, injunctive relief, and attorney's fees to the plaintiff, Specialized Technology.

The defendants appealed, arguing that the judge could not make findings contrary to the jury's verdict and that Chapter 93A. The Appeals Court affirmed the judgment and concluded that the trial court judge was not bound by the jury's findings on the common-law claims when determining the Chapter 93A claim. *Id*.

At the outset of trial, the parties had agreed with the Court that the jury was to hear the common law claims, and this Court would decide the 93A claim.  Now, as in *Wallace* and *Specialized Tech*, this Honorable Court must make an independent determination whether Sig Sauer's sale and marketing of the P320 — despite known defect and failure to warn — constitutes conduct that falls within "the penumbra of some common-law, statutory, or other established concept of unfairness…whether it is immoral, unethical, oppressive, or unscrupulous, and whether it causes

substantial injury to consumers." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). Although the jury's verdict may be informative, particularly on the existence of a defect, causation and failure to warn, the Chapter 93A question remains for the Court to decide. As demonstrated in *Wallace Motors* and *Specialized Tech*, the decisions reached by the jury do not dictate this Court's decision.

## III.  CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request this Honorable Court allow Trial to commence on Plaintiff's 93A claim.


Respectfully submitted,


**SALTZ MONGELUZZI & BENDESKY P.C.**

By:  */s/ Ryan D. Hurd*
ROBERT W. ZIMMERMAN (*pro hac vice*)
RYAN D. HURD (*pro hac vice*)
SAMUEL A. HAAZ (*pro hac vice*)
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 496-8282 (Telephone)
rzimmerman@smbb.com
rhurd@smbb.com
shaaz@smbb.com

**LAW OFFICES OF STEVEN SEMENZA**

By:    /s/ *Stephen Semenza*
STEPHEN SEMENZA
100 Pier 4 Blvd, #1511
Boston, MA 02210
617-275-8191 (t)
stephen@ssemenzalaw.com
*Attorneys for Plaintiffs*

Dated: August 29, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Ryan Hurd, certify that the foregoing document was filed on the Court's

E-filing-System, where it is available for viewing and downloading for all

registered participants, which constitutes as good service under the rules of this

Court.

Dated: August 29, 2025                    <u>/S/ Ryan D. Hurd</u>
                                          Ryan D. Hurd